UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
                                                            :

RUBEN ROMERO,
                                                            :

                  Plaintiff,                   OPINION & ORDER
                                                            :

     -v.-
                                                             :      12 Civ. 8324 (JMF) (GWG)

                                                            :

LA REVISE ASSOCIATES, L.L.C. et al.,      :

                  Defendants.        :
---------------------------------------------------------------x

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

      Ruben Romero has sued La Revise Associates, LLC d/b/a/ Brasserie Ruhlmann, Jean Denoyer, and Regis Marnier (collectively, "defendants") for violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), and the New York Labor Law ("NYLL"). Romero now moves to have this case conditionally approved as a collective action with notice being sent to tipped employees and kitchen staff employed by defendants ("Covered Employees").[1] For the following reasons, this motion is granted.

---

[1] See Notice of Plaintiff's Motion for Conditional Collective Certification and for Court Facilitation of Notice Pursuant to 29 U.S.C. § 216(b), filed Mar. 21, 2013 (Docket # 16) ("Pl. Mot."); Memorandum of Law in Support of Plaintiff's Motion for Conditional Collective Certification, filed Mar. 21, 2013 (Docket # 17) ("Pl. Mem."); Declaration of Ruben Romero, filed Mar. 21, 2013 (Docket # 18) ("Romero Decl."); Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Conditional Collective Certification, filed Apr. 4, 2013 (Docket # 19) ("Def. Mem."); Declaration of Bernard Collin in Opposition to Plaintiff's Motion for Conditional Certification, filed Apr. 4, 2013 (Docket # 20) ("Collin Decl.");Reply Memorandum of Law in Support of Plaintiff's Motion for Conditional Collective Certification, filed Apr. 26, 2013 (Docket # 22) ("Reply"); Letter from Shin Hahn to the Honorable Gabriel W. Gorenstein, dated May 31, 2013 (Docket # 45) ("Pl. May 31 Letter"); Letter from C.K. Lee to the Honorable Gabriel W. Gorenstein, dated June 6, 2013 (Docket # 47); Letter from Kenneth W. DiGia to the Honorable Gabriel W. Gorenstein, dated June 4, 2013 (Docket # 46) ("Def. June 4 Letter"); Letter from Kenneth W. DiGia to the Honorable Gabriel W. Gorenstein, dated June

I.  BACKGROUND

La Revise Associates, LLC operates a restaurant at 45 Rockefeller Plaza called Brasserie Ruhlmann.  See Collin Decl. ¶ 1.  From July 2011 to July 2012, Romero worked there as a busboy and had a regular weekly work schedule of five hours per day for four to five days per week.  Romero Decl. ¶¶ 1, 3.  Romero was a tipped employee.  Id. ¶ 1.  He asserts that he and other tipped employees were not paid the statutory minimum wage, id. ¶ 2, that he and other tipped employees did not receive proper notice regarding tip credits, id. ¶ 4, and that defendants unlawfully employed him and other tipped employees in non-tipped duties exceeding 20% of each workday, id. ¶¶ 5–6.  Romero asserts that he "personally observed that it is Defendants' policy to pay below the statutory minimum wage rate to all tipped employees."  Id. ¶ 2.  Romero was paid an hourly rate of "up to $5.00 per hour," and "[o]ther tipped employees were similarly compensated, all at rates below the minimum wage."  Id. ¶ 3.  Romero has "not received, nor [has he] seen any other tipped employee, receive proper notice explaining what a tip credit is, nor the amount of tip credit allowance taken by Defendants against all tipped employees," and "[a]ny notice provided to tipped employees was in English and not in their native language."  Id. ¶ 4.  Defendants also "failed at all times to provide in paystubs to all tipped employees (i) that they were claiming a tip credit allowance and (ii) the amount of such tip credit allowance for each relevant pay period."  Id.  Romero also asserts that "[a]ll tipped employees were required to spend at least 20% of their time daily in non-tipped related activities, such as cleaning the restaurant, cleaning the basement, moving inventory and re-arranging furniture."  Id. ¶ 5.  In

---

13, 2013 (Docket # 48); Letter from C.K. Lee to the Honorable Gabriel W. Gorenstein, dated Aug. 20, 2013 (Docket # 49) ("Pl. Aug. 20 Letter"); Letter from Kenneth W. DiGia to the Honorable Gabriel W. Gorenstein, dated Aug. 29, 2013 (Docket # 50).

addition, defendants engaged in "time shaving with respect to all non-exempt employees . . . . For example, no employee was allowed to punch in until they changed into required uniforms and all employees were required to punch out before they changed out of uniforms." Id. ¶ 6. When Brasserie Ruhlmann was not busy, "employees . . . were sent home without call-in pay." Id. ¶ 7. Romero never "received a wage and hour notice in [his] native language and . . . observed that all employees received wage and hour notices only in English." Id. ¶ 8. In addition, Romero "personally observed that all non-exempt employees received the same form of wage statements," which he asserts do not satisfy New York law. Id. ¶ 9.

Defendants have submitted an affidavit from Bernard Collin, the managing partner of La Revise Associates, LLC. See Collin Decl. He has been employed in this position since Brasserie Ruhlmann's inception in 2005. Id. ¶ 1. He stated that "[n]otices in English and Spanish prepared by the United States and New York State Departments of Labor advising employees of their rights to a minimum wage and overtime, including the tip credit permitted by law, were prominently displayed on Ruhlmann's wall since 2005 in an area frequented by employees where they were plainly visible during the entire course of the Plaintiff's employment." Id. ¶ 4. Collin hired Romero as a busboy in July 2011, at which time he "advised him of his regular and overtime wage rates, and explained the tip credit to him." Id. ¶ 6. He gave Romero "a written notification of the hourly wage rate and overtime rate he was to be paid and a written notice advising . . . Romero that he would be paid $5 per hour as a direct wage and that his tips would be at least $2.25[ ]per hour." Id. ¶ 6. Collin asserted that "Romero's file contains a signed wage rate acknowledgement . . . and a tip credit notice and acknowledgement." Id. ¶ 6.

In addition, Collin stated that "[i]n January 2010 [he] began to offer current employees

and all new hires arbitration agreements to avoid the expense and inconvenience of litigation." Id. ¶ 5. While he has not located an arbitration agreement signed by Romero, id. ¶ 6, Collin asserted that current employees of Ruhlmann have entered into effective binding arbitration agreements, "as have all former employees employed since January 2010," id. ¶ 7. He asserted that "Romero appears to be the only person to have worked for Ruhlmann since January 2010 who did not sign an arbitration agreement." Id. ¶ 8. Collin also stated that based on a review of Ruhlmann's records and from his experience "hiring employees and overseeing the operation of the business," he had "not identified a single employee who did not understand the written tip credit notice and acknowledgement Ruhlmann provided." Id. ¶ 9. He also stated that "[n]o former or current employee has ever questioned [him] or any Defendant about Romero's allegations or expressed a desire to join this lawsuit." Id. ¶ 10.

On July 12, 2013, defendants' counsel submitted a letter to the Court, stating that contrary to Collin's statements, they have been unable to locate arbitration agreements for a number of employees besides Romero. See Letter from Kenneth W. DiGia to the Honorable Gabriel W. Gorenstein, dated July 12, 2013 (Docket # 38), at 1–2. Defense counsel states that "there are no more than fifteen former employees and one current employee for whom arbitration agreements have not been located," but that this is "not significant because of these 16 . . . (a) six only worked for 12 hours or less and therefore there was no opportunity to obtain an arbitration agreement from them and (b) one of them worked for ten days or less in January 2010." Id. at 1. Aside from these individuals, there are "8 former employees (excluding, of course, Mr. Romero) and one current employee for whom arbitration agreements have not yet been located." Id. at 1–2. On August 20, 2013, Romero submitted a letter to the Court stating that defendants had produced an additional 35 arbitration agreements and asserting that there

4

remain 567 total employees who do not have legible signed arbitration agreements. See Pl. Aug. 20 Letter.

## II.	APPLICABLE LEGAL PRINCIPLES

The FLSA was enacted to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers . . . ." 29 U.S.C. § 202(a). "The purpose of the FLSA . . . was to 'guarantee [] compensation for all work or employment engaged in by employees covered by the Act.'" Reich v. N.Y. City Transit Auth., 45 F.3d 646, 648–49 (2d Cir. 1995) (alteration in original) (quoting Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 602 (1944)).

Section 216(b) of the FLSA provides, in pertinent part:

> An action to recover . . . liability . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). While the statute does not prescribe any procedures for approval of collective actions, section 216(b) has long been construed to grant authority to a district court to mandate that notice be given to potential plaintiffs informing them of the option to join the suit. See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989) ("[D]istrict courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs."); Braunstein v. E. Photographic Labs., Inc., 600 F.2d 335, 336 (2d Cir. 1978) ("Although one might read the [FLSA], by deliberate omission, as not providing for notice, . . . it makes more sense, in light of the 'opt-in' provision of s 16(b) of the Act, 29 U.S.C. s 216(b), to read the statute as permitting, rather than prohibiting, notice in an appropriate case.")

(citations omitted), cert. denied, 441 U.S. 944 (1979).  Orders authorizing notice are often referred to as orders "certifying" a collective action, even though the FLSA does not contain a certification requirement.  Myers v. Hertz Corp., 624 F.3d 537, 555 n.10 (2d Cir. 2010), cert. denied, 132 S. Ct. 368 (2011).  The act of "certifying" a collective action, however, means only that this Court has "exercise[d] . . . [its] discretionary power . . . to facilitate the sending of notice to potential class members."  Id.  The approval of a collective action thus amounts to a "'case management' tool for district courts to employ in 'appropriate cases.'"  Id. (quoting Hoffmann-La Roche Inc., 493 U.S. at 169, 174).

   The requirements of Fed. R. Civ. P. 23 do not apply to the approval of a collective action.  Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54 (S.D.N.Y. 2005).  Accordingly, "no showing of numerosity, typicality, commonality, and representativeness need be made."  Lewis v. Nat'l Fin. Sys., Inc., 2007 WL 2455130, at *2 (E.D.N.Y. Aug. 23, 2007) (citation omitted).  Furthermore, "[i]n contrast to the procedures for a class action under Fed. R. Civ. P. 23," in a collective action, "only plaintiffs who affirmatively opt in can benefit from the judgment . . . ."  Indergit v. Rite Aid Corp., 2010 WL 2465488, at *3 (S.D.N.Y. June 16, 2010) (internal quotation marks and citations omitted).

   "The threshold issue in deciding whether to authorize class notice in an FLSA action is whether plaintiffs have demonstrated that potential class members are 'similarly situated.'"  Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (quoting 29 U.S.C. § 216(b)).  "Neither the FLSA nor its implementing regulations define the term 'similarly situated.'  However, courts have held that plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law."  Id. (citing cases); accord Boutros v. JTC Painting

& Decorating Corp., 2013 WL 3110943, at *2 (S.D.N.Y. June 19, 2013); Guillen v. Marshalls of MA, Inc., 841 F. Supp. 2d 797, 800 (S.D.N.Y. 2012).

In other words, at this preliminary stage, the focus of the inquiry "is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated." Young, 229 F.R.D. at 54 (citation omitted); accord Guillen, 841 F. Supp. 2d at 797. In some cases, "it may be appropriate . . . to find plaintiffs and potential plaintiffs similarly situated based simply on plaintiffs' substantial allegations that they and potential plaintiffs were common victims of a FLSA violation, particularly where defendants have admitted that the actions challenged by plaintiffs reflect a company-wide policy." Damassia v. Duane Reade, Inc., 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006) (internal quotation marks and citations omitted); accord Davis v. Abercrombie & Fitch Co., 2008 WL 4702840, at *9 (S.D.N.Y. Oct. 23, 2008) ("similarly situated" standard "may be satisfied with 'substantial allegations' of a factual nexus between named plaintiffs and potential opt-in plaintiffs with regard to their employer's alleged FLSA violation") (quoting Ayers v. SGS Control Servs., Inc., 2004 WL 2978296, at *5 (S.D.N.Y. Dec. 21, 2004)) (additional citation omitted).[2]

Once plaintiffs have opted in and after discovery is complete, "courts conduct a more

---

[2] Some case law holds that "where a defendant employer shows either that the potential recipients of the notice are not similarly situated to the plaintiff or that it will likely succeed at trial [on the merits], a court may refuse to authorize notice or postpone deciding the issue pending further discovery and motion practice." Amendola v. Bristol-Myers Squibb Co., 558 F. Supp. 2d 459, 467 (S.D.N.Y. 2008); accord Pefanis v. Westway Diner, Inc., 2010 WL 3564426, at *3 (S.D.N.Y. Sept. 7, 2010). Other courts have criticized this approach and have described it as "highly questionable" in light of the Second Circuit's holding in Myers, 624 F.3d at 554–55. See Stevens v. HMSHost Corp., 2012 WL 4801784, at *2 n.5 (E.D.N.Y. Oct. 10, 2012); accord Cunningham v. Elec. Data Sys. Corp., 754 F. Supp. 2d 638, 645–46 (S.D.N.Y. 2010).

stringent 'second tier' analysis upon a full record to decide whether the additional plaintiffs are similarly situated to the original plaintiffs." Indergit, 2010 WL 2465488, at *4; accord Pefanis, 2010 WL 3564426, at *4.

In dictum, the Second Circuit has characterized the two-step process described above as "sensible." Myers, 624 F.3d at 555.

III. ANALYSIS

    A. Approval as Collective Action

Romero argues that he is similarly situated to all tipped employees and kitchen staff employed by defendants for the past six years because these employees were all subject to the same, allegedly illegal, compensation scheme. Pl. Mem. at 8. Defendants argue that Romero is not similarly situated to these employees, and that in fact, Romero is "similarly situated only to non-English speaking bussers who have not signed arbitration agreements," of which there are no others. Def. Mem. at 5. Defendants assert that Romero "has utterly failed to make the requisite showing of a factual nexus with any potential class or collective members." Id. at 11.

The Court disagrees with defendants' arguments. Case law imposes only a very limited burden on plaintiffs for purposes of proceeding as a conditional collective action. "[C]ourts have conditionally certified collective actions under the FLSA where plaintiffs, based on their firsthand observations, identify an approximate class of similarly situated individuals." Hernandez v. Immortal Rise, Inc., 2012 WL 4369746, at *4 (E.D.N.Y. Sept. 24, 2012). Here, Romero has done just that, stating in his declaration that he "personally observed . . . Defendants' policy to pay below the statutory minimum wage rate to all tipped employees," that he and other tipped employees were compensated "all at rates below the minimum wage," that he has never seen a tipped employee "receive proper notice explaining what a tip credit is," that

8

he and other tipped employees had to spend more than 20% of their daily time in non-tipped related activities, that he observed defendants engaging in time-shaving, that he observed when employees were sent home without call-in pay if the restaurant was not busy, and that he "personally observed that all non-exempt employees received the same form of wage and hour notice." Romero Decl. ¶¶ 2–9. The affidavit of a plaintiff attesting to the existence of similarly situated plaintiffs is sufficient for the purposes of a motion to approve a collective action. See Cheng Chung Liang v. J.C. Broadway Restaurant, Inc., 2013 WL 2284882, at *2–3 (S.D.N.Y. May 23, 2013) ("For the purposes of this motion, . . . plaintiffs' evidence — in the form of [one employee's] affidavit — is sufficient to establish that . . . there may be class members with whom he is similarly situated."). Thus, Romero has made a sufficient showing that he and potential plaintiffs "were victims of a common policy or plan that violated the law." Hoffman, 982 F. Supp. at 261.

Defendants' principal argument is that because other employees signed arbitration agreements, Romero is not similarly situated to these other employees. Def. Mem. at 6–14. Defendants assert that the claims here are "properly pursued solely in arbitration, on an individual basis, by all of Ruhlmann's employees who signed such an agreement" and therefore that "Ruhlmann's employees are dissimilar from Plaintiff Romero and must pursue any claims they may have in an arbitral forum rather than federal court." Def. Mem. at 8–9. Romero challenges both the enforceability and the validity of these arbitration agreements. He argues that the agreements are not enforceable because they violate the fee-shifting provision of the FLSA. Reply at 6–7. Romero also argues that defendants caused several of these agreements to be signed by coercion, that it is highly likely that several employees did not actually sign arbitration agreements, and that the validity of the signatures on several agreements are

questionable. Reply at 7–9; Pl. May 31 Letter at 2. Additionally, he asserts that the agreements are unenforceable because they limit the statute of limitations on employees' claims to six months and because they were not provided to employees in their native language. Pl. Aug. 20 Letter at 2–3.

As already noted, the question on a motion to proceed as a collective action is whether the proposed plaintiffs are similarly situated "with respect to their allegations that the law has been violated." Young, 229 F.R.D. at 54; accord Meyers, 624 F.3d at 555 (in conditional collective action approval, question is whether the proposed plaintiffs are similarly situated to the named plaintiffs "with respect to whether a FLSA violation has occurred"). The arbitration agreements do not create any differences between Romero and the proposed plaintiffs with respect to Romero's claims that defendants have violated the FLSA. That is, the validity vel non of the agreements is unrelated to any claims of a violation of the FLSA. Under this reasoning, the existence of differences between potential plaintiffs as to the arbitrability of their claims should not act as a bar to the collective action analysis. Indeed, courts have consistently held that the existence of arbitration agreements is "irrelevant" to collective action approval "because it raises a merits-based determination." D'Antuono v. C & G of Groton, Inc., 2011 WL 5878045, at *4 (D. Conn. Nov. 23, 2011) (citing cases); accord Hernandez, 2012 WL 4369746, at *5; Salomon v. Adderly Indus., Inc., 847 F. Supp. 2d 561, 565 (S.D.N.Y. 2012) ("The relevant issue here, however, is not whether Plaintiffs and [potential opt-in plaintiffs] were identical in all respects, but rather whether they were subjected to a common policy to deprive them of overtime pay . . . .") (alteration in original) (internal citation and quotation marks omitted).

In support of its argument that the existence of arbitration agreements merits denial of collective action approval, defendants make arguments about the eventual enforceability of the

arbitration agreements and rely on cases in which courts granted motions to dismiss and compel arbitration because of such agreements.  See Def. Mem. at 6–7.  Critically, defendants do not even address the cases holding that consideration of the validity of arbitration agreements is inappropriate in the context of a motion to approval an FLSA collective action.  The situation here is thus akin to the situation in Raniere v. Citigroup Inc., 827 F. Supp. 2d 294 (S.D.N.Y. 2011), rev'd on other grounds, 2013 WL 4046278 (2d Cir. 2013), in which the court remarked:

> Defendants have failed to cite a single authority finding that due to the possibility that members of the collective [action] might be compelled to bring their claims in an arbitral forum, certification is not appropriate.  Such arguments are best suited to the second certification stage, where, on a fuller record, the court will examine whether the plaintiffs and opt-ins are in fact similarly situated.

Id. at 324.

Defendants' strongest argument is that "[i]t would be a waste of judicial and party resource to force defendants" to send notice to individuals ultimately bound to arbitrate claims.  Def. June 4 Letter at 3.  But the notice requirement is not unduly burdensome in this case and the defendants' proposal essentially amounts to an invitation for the Court to adjudicate the validity of the arbitration agreements.  But, as already noted, case law makes clear that this sort of merits-based determination should not take place at the first stage of the conditional collective action approval process.  Plaintiff has raised at least colorable arguments to support the invalidity or unenforceability of the arbitration agreements, some of which are fact-intensive.  Case law holds, however, that issues of fact surrounding arbitration agreements are properly resolved at the second stage of the two-step inquiry.  D'Antuono, 2011 WL 5878045, at *5; accord Salomon, 847 F. Supp. 2d at 565 ("[A] fact-intensive inquiry is inappropriate at the notice stage, as Plaintiffs are seeking only conditional certification.") (citing cases); Ali v. Sugarland Petroleum, 2009 WL 5173508, at *4 (S.D. Tex. Dec. 22, 2009) ("The Court will make

11

the determination [of whether to exclude those who signed arbitration agreement from the class] at the conclusion of discovery, when it may properly analyze the validity of the arbitration agreement."). Defendants not only fail to distinguish these cases, they do not even proffer any argument as to why the reasoning of these cases is wrong.[3]

Defendants have submitted evidence contradicting Romero's claim that he is similarly situated to other employees with respect to other aspects of his claims, such as his understanding of the tip credit. See Collin Decl. ¶ 9. However, "the two-stage certification process exists to help develop the factual record, not put an end to an action on an incomplete one." Griffith v. Fordham Fin. Mgmt., Inc., 2013 WL 2247791, at *3 (S.D.N.Y. May 22, 2013) (granting collective action approval where defendant had put forth "contravening evidence") (emphasis omitted) (internal citations and quotation marks omitted).  For these reasons, Romero's motion for conditional approval of a collective action is granted.

B.   Notice

Romero has requested that the Court order several measures in addition to conditional collective certification, including approval of a notice and consent form; the production of names, title, compensation rate, last known mailing addresses, alternate addresses, all known telephone numbers, and dates of employment of the relevant employees; and the posting of notice with consent forms in a conspicuous location at Brasserie Ruhlmann. Pl. Mot. at 1–2; Pl. Mem. at 1–2.

Defendants did not address any of these requests in their memorandum of law.  In the

---

[3] Nothing in this Opinion should be construed as affecting the ability of defendants to seek dismissal, prior to the second stage of the two-part inquiry, of the claims of any plaintiffs with valid arbitration agreements who join the action. See, e.g., Lloyd v. J.P. Morgan Chase & Co., 2013 WL 4828588, at *6 (S.D.N.Y. Sept. 9, 2013 ).

subsequent letters, defendants appear to raise only two objections.

One objection is that while plaintiff proposes that notice be sent to all non-exempt employees, "his Complaint specifically defines the putative FLSA collective action as brought on behalf of 'all non-exempt persons employed by Defendants in any tipped position on or after the date that is three years before the filing of the Complaint in this case as defined herein.'" See Def. June 4 Letter at 2–3 (citing Class and Collective Action Complaint, filed Nov. 15, 2012 (Docket # 1), ¶ 13). Defendants, however, cite no case law or legal principle that would require that the Court give effect to such a statement in the complaint rather than to a request made in a motion for approval of a collective action accompanied by supporting evidence. Romero's motion identifies the potential class as "tipped employees (including runners, bussers, waiters, barbacks and bartenders) and kitchen staff (including chefs, cooks, food preparers, dishwashers and porters) employed by Defendants . . . ." Pl. Mot. at 1; Pl. Mem. at 1. In the absence of any explanation as to why the proposed class definition is overbroad on the merits, we decline to find fault with a class that includes all non-exempt employees.

Second, the defendants point to the fact that the proposed class includes employees on staff up to six years prior to the filing of the complaint. See Def. June 4 Letter at 4. Defendants note that Romero's request "mixes the much shorter FLSA statute of limitations with the longer NYLL statute of limitations." See id. With respect to this point, we agree with defendants. The statute of limitations under the FLSA is not six years, as is true under state law, see Labor Law § 198(3); accord Dragone v. Bob Bruno Excavating, Inc., 45 A.D.3d 1238, 1239 (3d Dep't 2007), but rather up to three years, in the case of a wilful violation, see 29 U.S.C. § 255(a); accord Trinidad v. Pret A Manger (USA) Ltd., --- F. Supp. 2d ----, 2013 WL 3490815, at *14 (S.D.N.Y. July 11, 2013). While we are aware of cases allowing notice to employees reach

back six years, Winfield v. Citibank, N.A., 843 F. Supp. 2d 397, 410 (S.D.N.Y. 2012) (citing cases), we agree with those cases that limit the time period to the FLSA limitations period, see, e.g., Trinidad, 2013 WL 3490815, at *15; McBeth v. Gabrielli Truck Sales, Ltd, 768 F. Supp. 2d 396, 400 (E.D.N.Y. 2011). Three years is the maximum time period to join an FLSA collective action and there is no New York state class action certified as of yet. If and when a class is certified under New York law, class members will receive notice at that time through the class action notification process.

Accordingly, Romero's remaining requests as to notice are granted except with respect to the time period at issue.

## IV. CONCLUSION

For the foregoing reasons, Romero's motion for conditional approval of this suit as a collective action (Docket # 16) is granted. Romero's proposed notice of action and consent form as modified by this opinion is approved.

SO ORDERED.

Dated: September 16, 2013
New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge