UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
                                                              :
RUBEN ROMERO,                                                 :
on behalf of himself, FLSA Collective Plaintiffs,             :
and the Class,                                                :
                                                              :     OPINION & ORDER
                                    Plaintiff,                :
                  -v.-                                         :
                                                              :     12 Civ. 8324  (GWG)
                                                              :
LA REVISE ASSOCIATES, L.L.C. et al.,                          :
                                                              :
                                    Defendants.               :
--------------------------------------------------------------x

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Ruben Romero ("Romero") sued La Revise Associates, LLC d/b/a Brasserie Ruhlmann,

Jean Denoyer, and Regis Marnier (collectively, "defendants") for violations of the Fair Labor

Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), and the New York Labor Law ("NYLL").

Plaintiff commenced the action as an FLSA collective action under 29 U.S.C. § 216(b), and a

putative class action as to the NYLL claims under Rule 23 of the Federal Rules of Civil

Procedure.  The parties have consented to conduct all proceedings before the undersigned,

pursuant to 28 U.S.C. § 636(c).

Romero now seeks an order certifying the settlement class; approving the class action

settlement; approving the FLSA settlement; and awarding a service award to named plaintiff

Romero, attorneys' fees and costs to class counsel, and fees to the claims administrator.  For the

following reasons, the motions (Docket ## 78, 81, 83) are granted, with certain modifications

detailed below.

I.      <u>BACKGROUND</u>

The complaint alleges that Romero and other members of the FLSA collective and NYLL putative class were employed by defendants.  <u>See</u> Complaint, filed Nov. 15, 2012 (Docket # 1) ("Compl."), ¶ 10.  It alleges that defendants failed to pay them the minimum required hourly wage, failed to properly inform them of their rights under the FLSA, and failed to provide them with adequate wage statements.  <u>See id.</u> ¶¶ 41, 44, 51-52.  The proposed class has been defined to include defendants' current and former employees who worked as non-exempt employees from November 15, 2006 through February 1, 2014 and who did not have arbitration agreements with defendants.  <u>See</u> Order, dated July 2, 2014 (Docket # 72) ("Preliminary Approval Order"), ¶ 5.

After extensive negotiations, the parties entered into a Settlement Agreement in April 2014.  <u>See</u> Declaration of C.K. Lee in Support of Plaintiff's Unopposed Motion for Certification of the Settlement Class, Final Approval of the Class Settlement and Approval of the FLSA Settlement, filed Sept. 2, 2014 (Docket # 80) ("Lee Decl."), ¶¶ 14-15.  That agreement creates a fund of $250,000, which will cover class members' awards, a service award to Romero, attorneys' fees and costs, and administration costs.  <u>Id.</u> ¶ 20.  According to plaintiff's counsel, the Settlement Agreement provided that after the deduction of attorneys' fees and costs, administration fees, and a service payment to Romero, each member of the "Non-Tipped Subclass" — that is, employees who were not receiving tips — would receive a payment of $100.  <u>See</u> Memorandum of Law in Support of Plaintiff's Unopposed Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement and Approval of the FLSA Settlement, filed Sept. 2, 2014 (Docket # 79) ("Pl. Mem."), at 2, 4.  Each member of the "Tipped Subclass" would receive allocations based on their weeks worked, as recorded in defendants'

records.  Id. at 4.

On July 2, 2014, this Court preliminarily approved the Settlement Agreement.  See Preliminary Approval Order ¶ 1.  The Court also provisionally certified the settlement class as consisting of "[a]ll current and former employees of Defendants who worked as non-exempt employees from November 15, 2006 through February 1, 2014 and who did not have arbitration agreements and are listed on Exhibit A to the Settlement Agreement."  Id. ¶ 5.  Additionally, the Court appointed plaintiff's counsel C.K. Lee as class counsel for settlement purposes, id. ¶ 8, and approved a notice to class members informing them of the proposed settlement (the "Notice"), id. ¶ 10.

The Notice was sent to all 486 identified potential class members on July 24, 2014.  Lee Decl. ¶¶ 17, 21.  That Notice summarized the Settlement Agreement and informed the potential class members of their rights under the settlement, including their right to opt out or object.  See Notice of Pendency of Class Action and Proposed Settlement, dated July 24, 2014 (annexed to Preliminary Approval Order, Docket # 72).  It also informed them that Romero sought a $10,000 service award, that class counsel sought fees in the amount of one-third of the settlement fund to be deducted from that fund, and that the administrator's fee of $25,000 would also be deducted from the settlement fund.  See id. at 3, 5.

The Notice provided that potential class members who wished to opt out of the settlement should send signed, written statements, postmarked by August 18, 2014.  Id. at 5.  Between August 7, 2014, and August 13, 2014, five such statements were filed with the court (Docket ## 73-77).  Additionally, on October 6, 2014, the court received one late opt-out notice (Docket # 86).  No objections to the settlement were filed.

On October 17, 2014, this Court held a fairness hearing.  No class member appeared at

that hearing, nor has any member opposed the proposed settlement.

II.     ANALYSIS

    A.     Final Certification of the Settlement Class

Under Rule 23(a), a class must meet the requirements of numerosity, commonality, typicality, and adequacy in order to be certified by the court.  See Fed. R. Civ. P. 23(a). Additionally, the class must fall into at least one of the three categories set out in Rule 23(b).

    1.     Rule 23(a)

Here, the class consists of 486 members, see Lee Decl. ¶ 21, and thus is "so numerous that joinder of all members is impracticable," Fed. R. Civ. P. 23(a)(1).  See, e.g., Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995) ( "[N]umerosity is presumed at a level of 40 members . . . .").

Second, there are "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Commonality "does not mean that all issues must be identical as to each member," but rather requires "that plaintiffs identify some unifying thread among the members' claims that warrants class treatment."  Kamean v. Local 363, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., 109 F.R.D. 391, 394 (S.D.N.Y. 1986) (citations omitted). Here, all class members claim that defendants failed to pay them the required minimum wage and off-the-clock wages and that defendants failed to provide pay stubs and required notices. See Compl. ¶¶ 51-52.  All of these claims are similar and arise under the NYLL.  While the details of individual plaintiffs' claims might vary, there is sufficient overlap to establish a "unifying thread" among plaintiffs.

Third, Romero's claims are "typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Similar to commonality, "typicality does not require the representative party's

claims to be identical to those of all class members." Frank v. Eastman Kodak Co., 228 F.R.D. 174, 182 (W.D.N.Y. 2005) (citing Trief v. Dun & Bradstreet Corp., 144 F.R.D. 193, 200 (S.D.N.Y. 1992)). "Rather, typicality is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." Trief, 144 F.R.D. at 200 (quoting In re Drexel Burnham Lambert Grp., Inc., 960 F.2d 285, 291 (2d Cir. 1992)) (internal quotation marks omitted). Here, all the class members claim similar violations of the NYLL by defendants. While Romero's own claims may not exactly match the claims of all the other plaintiffs, they are sufficiently similar to other plaintiffs' claims to satisfy the typicality requirement.

Finally, the representative party, Romero, will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is meant to "ensure that the named representatives will have an interest in vigorously pursuing the claims of the class and have no interests antagonistic to the interests of other class members." Toure v. Cent. Parking Sys. of N.Y., 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (quoting Denney v. Deutsche Bank AG, 433 F.3d 253, 268 (2d Cir. 2006)) (internal quotation marks and ellipsis omitted). Here, there is no reason to believe that Romero's interests are at odds with the class members' in this litigation.

2.    Rule 23(b)

Plaintiff asserts that the class falls within Rule 23(b)(3), which requires that common questions predominate over questions affecting only individual members and that a class action is superior to other methods of resolving the dispute. See Pl. Mem. at 9.

The "predominance" requirement asks if "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved

through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." UFCW Local 1776 v. Eli Lilly & Co., 620 F.3d 121, 131 (2d Cir. 2010) (quoting Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir. 2002)) (internal quotation marks omitted). This requirement is satisfied where plaintiffs are "unified by a common legal theory." McBean v. City of New York, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

The class members' legal theories under the NYLL are the same in this case: they allege that defendants failed to pay them minimum wage and wages for off-the-clock work, and that defendants did not provide them notices and pay stubs required by law. See Compl. ¶¶ 51-52. Thus, plaintiffs' claims have a common legal theory, which is sufficient to overcome any minor variations in their individual situations. Although the question of damages is particular to each plaintiff, "the need for individualized determinations of the putative class members' damages does not, without more, preclude certification of a class under Rule 23(b)(3)." In re Indus. Diamonds Antitrust Litig., 167 F.R.D. 374, 382 (S.D.N.Y. 1996); see also Vaccariello v. XM Satellite Radio, Inc., 295 F.R.D. 62, 73 (S.D.N.Y. 2013) ("[N]either the existence of individual defenses nor difficulties in calculating damages in and of themselves defeat the predominance requirement.") (citation omitted). The predominance requirement is therefore satisfied here.

Rule 23(b)(3) also requires that a class action be the superior method of adjudicating the conflict. Factors relevant to the superiority inquiry include the class members' interests in individually controlling the suit, whether class members have already brought individual actions concerning the dispute, and the desirability of concentrating the litigation of the claims in the forum. See Fed. R. Civ. P. 23(b)(3)(A)-(C). Here, there is no evidence that class members have brought other suits on these claims, and there is no reason why they would have a particularly strong interest in controlling the suit themselves. To the contrary, adjudicating all claims in this

6

Court conserves judicial and attorney resources and serves to vindicate the rights of those class members for whom individual suits might not be economically worthwhile.  Therefore, the superiority requirement is satisfied.

Accordingly, the class is hereby certified.

B.    Adequacy of Notice to Class

In the Order of July 2, 2014, the Court approved plaintiffs' proposed Notice to the settlement class.  See Preliminary Approval Order ¶ 10.  That Order stated that the Notice "fully complies with due process and Federal Rule of Civil Procedure 23," and that it "adequately puts class members on notice of the proposed settlement."  Id. ¶¶ 11-12.  Under direction of class counsel, the settlement administrator mailed the Notice to all 486 possible class members on July 24, 2014.  See Lee Decl. ¶ 21.  After 130 of those notices were returned as undeliverable, 61 replacement Notices were also mailed.  Id.

The Court confirms its prior approval of the Notice, holding that it was fair and adequate to apprise possible class members of the settlement.  We further conclude that the process by which the Notice was distributed complies with all requirements, including constitutionally required due process.

C.    Approval of the Settlement Agreement

Rule 23(e) requires approval of a class action settlement by the court.  Fed. R. Civ. P. 23(e).  A court should approve a settlement only if it is "fair, adequate, and reasonable, and not a product of collusion."  Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir. 2000) (citations omitted). This requires the court to consider both procedural and substantive fairness.  See, e.g., Beckman v. KeyBank, N.A., 293 F.R.D. 467, 474 (S.D.N.Y. 2013).

7

    1.    <u>Procedural Fairness</u>

There is a presumption of procedural fairness as to a proposed class settlement where that settlement is "reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." <u>McReynolds v. Richards-Cantave</u>, 588 F.3d 790, 803 (2d Cir. 2009) (quoting <u>Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.</u>, 396 F.3d 96, 116 (2d Cir. 2005)).

As noted in the Order of July 2, 2014, "the Settlement Agreement is the result of extensive, arm's length negotiations by counsel well-versed in the prosecution of wage and hour class and collective actions." Preliminary Approval Order ¶ 3. The parties engaged in lengthy negotiations (including mediation before an experienced mediator) over the course of months, as well as extensive discovery. <u>See</u> Lee Decl. ¶¶ 11-14, 16. Therefore, the presumption of procedural fairness applies.

    2.    <u>Substantive Fairness</u>

To determine whether a class action settlement meets the requirement of substantive fairness, courts look to the so-called "<u>Grinnell</u> factors." <u>E.g.</u>, <u>Charron v. Weiner</u>, 731 F.3d 241, 247 (2d Cir. 2013), <u>cert. denied</u>, 134 S. Ct. 1941 (2014). These factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

<u>City of Detroit v. Grinnell Corp.</u>, 495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted).

Here, most of the <u>Grinnell</u> factors weigh in favor of approving the Settlement Agreement. First, the large number of class members and the fact-intensive nature of their claims mean that

litigation would likely be lengthy, complex, and expensive.  Second, only six class members of

the potential 486 have opted out of the settlement, and none have objected to it.  This indicates

the class's general approval of the Settlement Agreement.  See, e.g., Wright v. Stern, 553 F.

Supp. 2d 337, 345 (S.D.N.Y. 2008) ("The fact that the vast majority of class members neither

objected nor opted out is a strong indication that the proposed settlement is fair, reasonable, and

adequate.").

The third factor is meant to ensure that "counsel had an adequate appreciation of the

merits of the case before negotiating."  Prasker v. Asia Five Eight LLC, 2010 WL 476009, at *5

(S.D.N.Y. Jan. 6, 2010) (quoting In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 537 (3d

Cir. 2004)).  Here, class counsel interviewed Romero on multiple occasions and reviewed over

2,200 pages of discovery documents produced by defendants.  Lee Decl. ¶ 9.  Both parties

engaged in extensive discovery before entering into the Settlement Agreement.  See id. ¶ 13.

This shows that counsel for both sides adequately appreciated the merits of the case before

settling.

As to the fourth and fifth factors, plaintiffs would certainly face some risks in

establishing both liability and damages.  There are numerous unsettled legal and factual issues,

many of which could potentially be decided adverse to the plaintiffs.  Having reviewed the

record, we accept that plaintiffs would likely face significant risks in continuing the litigation.

The sixth and seventh factors appear to be neutral.  As for the eighth factor, plaintiffs

calculate based on available information that the "best case scenario" would be a recovery in the

amount of $624,593.06, exclusive of liquidated damages.  Pl. Mem. at 19.  The $250,000 fund

provided for by the Settlement Agreement thus represents approximately 40% of this potential

recovery.  In evaluating this and the ninth Grinnell factor, there is no particular number that must

9

be reached for this percentage to be reasonable.  Rather, the settlement amount must be located

within "a range of reasonableness . . . — a range which recognizes the uncertainties of law and

fact in any particular case and the concomitant risks and costs necessarily inherent in taking any

litigation to completion."  Newman v. Stein, 464 F.2d 689, 693 (2d Cir. 1972); accord Frank,

228 F.R.D. at 186.  Based on the description of the risks of litigation, we find that the amount

provided by the Settlement Agreement falls within the range of reasonableness.

Having considered all of the Grinnell factors and based on the fact that they are either

neutral or weigh in favor of approving the Settlement Agreement, we conclude that it is

substantively fair.  Accordingly, we approve the class Settlement Agreement.

D.    Approval of the FLSA Settlement

The parties also seek approval of the settlement inasmuch as it settles plaintiffs' claims

under the FLSA.[1]  Evaluation of an FLSA settlement is less rigorous than the court's evaluation

of a class action settlement "because, under the FLSA, parties may elect to opt in but a failure to

do so does not prevent them from bringing their own suits at a later date."  Beckman, 293 F.R.D.

at 476 (citation and internal quotation marks omitted).  "Typically, courts regard the adversarial

nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement."  Id.

(citation omitted).  Here, in light of the Court's approval of the class action settlement, it is

unnecessary to undergo a separate analysis of the FLSA claims, and the settlement of those

---

[1]  Some courts have held that court approval of FLSA settlements is always required.
See, e.g., Archer v. TNT USA, Inc., 2014 WL 1343126, at *14 (E.D.N.Y. Mar. 31, 2014);
Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).  Other courts have
disagreed with this proposition.  See, e.g., Martin v. Spring Break '83 Productions, L.L.C., 688
F.3d 247, 255 (5th Cir. 2012); Picerni v. Bilingual Seit & Preschool Inc., 925 F. Supp. 2d 368,
372-73 (E.D.N.Y. 2013); Martinez v. Bohls Bearing Equip. Co., 361 F. Supp. 2d 608, 632 (W.D.
Tex. 2005).  It is not necessary to resolve this disagreement inasmuch as both sides in this case
have sought approval of the settlement.

claims is approved.

       E.      Service Award

       Service awards, which are also called enhancement awards or incentive awards, are

common in class actions.  E.g., Lizondro-Garcia v. Kefi LLC, 2014 WL 4996248, at *9

(S.D.N.Y. Oct. 7, 2014).  Their purpose is to compensate the named plaintiff for

> the personal risk (if any) incurred by the plaintiff-applicant in becoming and
> continuing as a litigant, the time and effort expended by that plaintiff in assisting
> in the prosecution of the litigation or in bringing to bear added value (e.g., factual
> expertise), any other burdens sustained by that plaintiff in lending himself or
> herself to the prosecution of the claim, and of course, the ultimate recovery.

Roberts v. Texaco, Inc., 979 F. Supp. 185, 200 (S.D.N.Y. 1997); accord Torres v. Toback,

Bernstein & Reiss LLP, 2014 WL 1330957, at *3 (E.D.N.Y. Mar. 31, 2014).  Disproportionately

large service awards are often reduced if the class representative had little involvement in the

litigation.  See, e.g., Khanna v. Intercon Sec. Sys., Inc., 2014 WL 1379861, at *11 (E.D. Ca. Apr.

8, 2014) (reducing service award from $10,000 to $2,500 in part because named plaintiff did not

spend more time assisting counsel than in the average case); Michel v. WM Healthcare

Solutions, Inc., 2014 WL 497031, at *11-12 (S.D. Ohio Feb. 7, 2014) (reducing service award

from $10,000 to $3,000 in part because named plaintiffs were not deposed and did not attend

mediation or the fairness hearing).  Nonetheless, courts have given service awards in wage and

hour cases of $5,000 – $10,000 or higher.  See, e.g.,Toure v. Amerigroup Corp., 2012 WL

3240461, at *6 (E.D.N.Y. Aug. 6, 2012) (awards of $5,000 to $10,000 in wage and hour case);

Reyes v. Altamarea Grp., LLC, 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011) (awards of

$15,000 to three plaintiffs and $5,000 to one plaintiff); deMunecas v. Bold Food, LLC, 2010 WL

3322580, at *10 (S.D.N.Y. Aug. 23, 2010) (award of $5,000 to each of five plaintiffs).

       Here, Romero requests a service award of $10,000, to be paid from the settlement fund.

<u>See</u> Notice of Plaintiff's Unopposed Motion for Approval of Class Representative Service Award, filed Sept. 2, 2014 (Docket # 81). Romero was not deposed, and there is no evidence that he attended the mediation or any court proceedings. We have no doubt that his assistance to class counsel was useful, and for this and his willingness to accept what risks are attendant with being a named plaintiff, we believe he should receive some service award. However, under the facts presented, and in light of the total amount of the settlement fund, we reduce the amount of the service award to Romero to $5,000.

     F.    <u>Attorneys' Fees and Costs</u>

       1.    <u>Attorneys' Fees</u>

    Class counsel has requested that the Court award him $83,333 in attorneys' fees for his work on the case, or approximately 33.3% of the $250,000 settlement fund amount. <u>See</u> Memorandum of Law in Support of Plaintiff's Unopposed Motion for Approval of Attorneys' Fees, Administration Fees and Reimbursement of Expenses, filed Sept. 2, 2014 (Docket # 84), at 2; Declaration of C.K. Lee in Support of Plaintiff's Unopposed Motion for Approval of Attorneys' Fees, Administration Fees and Reimbursement of Expenses and Plaintiff's Unopposed Motion for Approval of Class Representative Service Award, filed Sept. 2, 2014 (Docket # 85) ("Lee Fees Decl.") ¶¶ 4, 6. "In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award," <u>e.g.</u>, <u>Prasker</u>, 2010 WL 476009, at *6 (citation omitted), and "the trend in this Circuit is to use the percentage of the fund method to compensate attorneys in common fund cases," <u>e.g.</u>, <u>Febus v. Guardian First Funding Grp., LLC</u>, 870 F. Supp. 2d 337, 339 (S.D.N.Y. 2012) (alteration, internal quotation marks, and citation omitted).

    The inquiry with respect to the award of attorneys' fees is whether the award is reasonable. For the court to make this determination, counsel must provide contemporaneous

records of the time spent in working on the litigation.  See, e.g., Lizondro-Garcia, 2014 WL

4996248, at *7.  Relevant factors in the reasonableness inquiry include the time and labor

expended by counsel, the risk of the litigation, the litigation's complexity, the quality of the

representation, the requested fee in relation to the settlement, and public policy considerations.

Wal-Mart Stores, Inc., 396 F.3d at 121-22 (quoting Goldberger, 209 F.3d at 50).

      Here, class counsel has provided detailed, contemporaneous records of the time spent on

this case.  See Exhibit A to Lee Fees Decl.  In addition, he has provided a description of his

qualifications.  See Lee Fees Decl. ¶¶ 2-3.  Based on those contemporaneous records, we

conclude that his total fees based on a reasonable hourly rate amount to $102,960, which is well

in excess of the $83,333 claimed under the percentage method.  Thus, the requested fees are

plainly reasonable in relation to the time and effort that counsel expended in the course of this

litigation.  See, e.g., Viafara v. MCIZ Corp., 2014 WL 1777438, at *14 (S.D.N.Y. May 1, 2014)

(noting that courts have awarded fees in class actions suits that exceeded by many multiples the

total that would have been awarded based on actual hours expended).  Additionally, the other

factors weigh in favor of a finding of reasonableness inasmuch as there was risk and complexity

involved in the litigation, and class counsel's efforts resulted in a fair and adequate settlement.

      For these reasons, class counsel's request for attorneys' fees in the amount of $83,333 is

granted.

          2.    Costs

      Class counsel also requests to be reimbursed $5,000 for costs incurred in connection with

this litigation, to be paid from the $250,000 settlement fund.  See Notice of Plaintiff's

Unopposed Motion for Approval of Attorneys' Fees, Administration Fees and Reimbursement of

Expenses, filed Sept. 2, 2014 (Docket # 83); Lee Fees Decl. ¶ 6.  However, by his own

approximation, he has only incurred costs in the amount of $4,185.  See Lee Fees Decl. ¶ 5.  No future costs are identified.  Therefore, we grant an award reimbursing these expenses in the amount of $4,185.

G.   Administration Fee

The $25,000 administration fee to be paid to Advanced Litigation Strategies is similarly approved.  The amount is in the same range made as awards in other cases for similar work.  See, e.g., Viafara, 2014 WL 1777438, at *15.

H.   Late Opt-Out

The Notice stated that potential class members who wished to opt out of the settlement were required to send a statement to that effect by August 18, 2014.  See Notice at 4.  The Court received one opt-out sent after that date, from Svjetlana Blagojevic.  See Request for Exclusion from Class, dated Oct. 1, 2014 and filed Oct. 6, 2014 (Docket # 86).  Because the Court "retains the power to allow claimants to file late opt-out requests pursuant to Fed. R. Civ. P. 6(b)(2), 60(b), or 23(d)," In re Prudential Sec. Inc. Ltd. P'ships Litig., 164 F.R.D. 362, 368-69 (S.D.N.Y. 1996) (footnotes omitted), aff'd, 107 F.3d 3 (2d Cir. 1996), and because defendants do not object to permitting this individual to opt out, Svejtlana Blagojevic is excluded from the class that is subject to this settlement along with the individuals who timely opted out.

III.   CONCLUSION

For the foregoing reasons, plaintiff's motion for final certification of the settlement class, for approval of the class action settlement, and for approval of the FLSA collective action (Docket # 78) is granted.  Plaintiff's motion for a class representative service award (Docket # 81) is granted in the amount of $5,000.  Plaintiff's motion for attorneys' fees for class counsel Lee (Docket # 83) is granted in the amount of $83,333, to be paid from the settlement fund.

14

Plaintiff's motion for an award of reimbursement of expenses (Docket # 83) is granted in the amount of $4,185 and his motion to approve the payment of $25,000 in administration fees to Advanced Litigation Strategies, LLC (Docket # 83) is also granted. Finally, the late opt-out of Svjetlana Blagojevic is accepted, and she is excluded from this settlement along with the individuals who timely opted out.

This Opinion and Order shall constitute the "Final Approval Order" of the Settlement Agreement under paragraph 1.12 of the Settlement Agreement. The parties shall proceed with the administration of the settlement in accordance with the terms of the Settlement Agreement. The Court retains jurisdiction over this action for the purpose of enforcing the Settlement Agreement and all other court orders relevant to effectuating the terms of the settlement and the distribution of settlement funds.

This case is dismissed with prejudice. The Clerk is requested to enter judgment and to close this case.

Dated: November 12, 2014
      New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

15